UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER TAYLOR, II, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COLE HANSENS, )<br>)<br>)<br>)<br>Defendant. ) | No. 1:19-cv-00064-NCC |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff Christopher Taylor, II for leave to commence this civil action without prepayment of the filing fee. (Docket No. 2). Having reviewed the motion and the financial information contained therein, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's official capacity claim against defendant Cole Hansens, as well as plaintiff's due process claim against Hansens in his individual capacity. However, the Court will direct the Clerk of Court to issue process on defendant Hansens in his individual capacity as to plaintiff's claim of excessive force.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted an inmate account statement. After reviewing the financial information contained in plaintiff's motion, the Court will require him to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If plaintiff is unable to pay the initial partial filing fee, he must provide documentation in support of his claim.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820

F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is currently incarcerated at the Southeast Correctional Center (SECC) in Charleston, Missouri. He brings this pro se civil action pursuant to 42 U.S.C. § 1983. His complaint names Correctional Officer Cole Hansens as the sole defendant.[1] (Docket No. 1 at 2). Officer Hansens is sued in both his official and individual capacities.

---

[1] In his statement of claim, plaintiff refers to two defendants: Officer Hansens and Officer Riley Johnson. However, only Officer Hansens is listed in the case caption. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). Moreover, in the section of the form complaint where plaintiff is instructed to list the defendants, he names only Officer Hansens. In the part of the form wherein plaintiff can list a second defendant, he has written "N/A." (Docket No. 1 at 3). Finally, plaintiff has not asserted any allegations against Officer Johnson that demonstrate the violation of a constitutional right. He states that he had a "situation" with Officer Johnson on November 11, 2018, but does not describe what that entailed. He also states that he saw Officer Johnson in his cell, on his bed. These facts

3

Plaintiff states that on November 13, 2018, he was an inmate at SECC, assigned to unit #2 in administrative segregation. (Docket No. 1 at 4). Officer Hansens and Officer Riley Johnson were conducting showers on this day. Officer Johnson came to plaintiff's cell and asked him if he wanted to take a shower. Plaintiff responded by telling Officer Hansens that plaintiff and Officer Johnson had "had a situation on November 11, 2018," and that plaintiff felt uncomfortable with Officer Johnson placing him in the shower.

Officer Hansens opened plaintiff's food port and placed him in wrist restraints, with a leash connected to the handcuffs. Plaintiff states that Officer Hansens then took him to the showers. He states that he was in the shower for ten minutes. While drying off, plaintiff states that he saw Officer Hansens and Officer Johnson in his cell. He was told by another offender that Officer Johnson was in his bed, on the top bunk. (Docket No. 1 at 5).

Plaintiff advised Officer Hansens that he was done with his shower and ready to return to his cell. Officer Hansens replied that he would have Officer Johnson take him back if plaintiff kept rushing. Officer Hansens also asked plaintiff if he had a "celly." Plaintiff responded that he did not. He was subsequently placed back into wrist restraints and escorted back to his cell.

Plaintiff asked Officer Hansens why Officer Johnson had been in his bed. Officer Hansens answered that "he didn't know and didn't care." While approaching his cell, plaintiff states that he saw pictures scattered about and some recent mail destroyed. Plaintiff told Officer Hansens that he wanted to speak to a sergeant and that he would not step into his cell "until this matter is taken care of." (Docket No. 1 at 5-6).

Plaintiff alleges that Officer Hansens pushed him inside the cell and "yanked the leash" that was connected to the handcuffs. (Docket No. 1 at 6). This forced plaintiff's hands and arms

---

are not sufficient to establish any constitutional violation. For these reasons, the Court declines to treat Officer Johnson as a defendant.

4

through the food port, causing him pain. He pulled back on his arms and again asked to speak to a sergeant. Officer Hansens allegedly responded by yanking him through the food port again. Next, plaintiff claims that Officer Hansens sprayed him in the face with pepper spray, which went into his eyes and mouth.

Sergeant Stephanie Noisworthy arrived and asked for an explanation. Plaintiff attempted to tell to her that he was "calling for a white shirt" when Officer Hansens threw him inside his cell and pepper sprayed him for no reason. He advised Sergeant Noisworthy that he could not breathe and was feeling suicidal because of the pepper spray.

Sergeant Noisworthy and Officer Damien Culbertson escorted plaintiff from his cell to a bench. (Docket No. 1 at 6-7). As he exited the cell, plaintiff states that he began spitting on the ground due to the pepper spray. (Docket No. 1 at 7). He states that his face felt as though it "was falling off" and that he was having trouble breathing.

Plaintiff was seated on the bench in full restraints, with his hands and feet secured. At that point, Officer Hansens walked up behind him, wrapped his arm around his neck, and began choking him. According to plaintiff, Sergeant Noisworthy gave Officer Hansens three directives to stop choking him. Eventually, Officer Hansens complied.

Lieutenant Stewart arrived and escorted plaintiff to housing unit #1, where he was allowed to rinse his face but not take a shower. He was assigned to a suicide cell, where he was later found unresponsive by Officer Lynch and taken to see the nurse. The nurse took his vitals and documented his injuries, including a red mark around his neck and bruising along his side and right arm. (Docket No. 1 at 7-8). Plaintiff alleges that ever since the incident occurred, Officer Hansens "comes around…[once] in a while to harass [him] by stating [that] sometimes [correctional officers] have to beat offenders to get [a] better understanding." (Docket No. 1 at 8).

Plaintiff claims that Officer Hansens' actions constituted the use of excessive force in violation of the Eighth Amendment. (Docket No. 1 at 11-12). He also asserts that Officer Hansens violated his right to due process under the Fourteenth Amendment by "writing a false conduct violation" that resulted in plaintiff receiving a further sixty days in administrative segregation. (Docket No. 1 at 12).

Plaintiff seeks to enjoin Officer Hansens from further physical violence and threats toward him. (Docket No. 1 at 14). He also requests $100,000 in compensatory damages and $25,000 in punitive damages.

## Discussion

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging that Officer Hansens used excessive force against him in violation of the Eighth Amendment and wrote a false conduct report in violation of the Fourteenth Amendment. For the reasons discussed below, plaintiff's official capacity claim against Officer Hansens must be dismissed. The Court will also dismiss plaintiff's due process claim. However, the Court will direct the Clerk of Court to issue process on plaintiff's individual capacity claim against Officer Hansens for use of excessive force.

### A. Official Capacity Claim

Plaintiff's claim against Officer Hansens in his official capacity must be dismissed. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075

6

(8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating that "a state is not a person for purposes of a claim for money damages under § 1983"). Moreover, in the absence of a waiver, the Eleventh Amendment bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

Here, plaintiff asserts that Officer Hansens is an employee of the Missouri Department of Corrections, which is a department of the State of Missouri. As noted above, an official capacity claim against an individual is actually a claim against that individual's employer. However, to the extent that the is seeking money damages, the State of Missouri is not a "person" that can be sued pursuant to § 1983. Moreover, plaintiff's claim is barred by the doctrine of sovereign immunity. Thus, plaintiff has failed to state an official capacity claim.

To the extent that plaintiff is seeking injunctive relief, he has failed to allege any facts to support official capacity liability against Officer Hansens.

7

A governmental entity can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To do so, a plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Specifically, a plaintiff must show that the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can potentially establish liability against a governmental entity.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the…official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

8

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert the liability of a governmental entity by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Plaintiff has not presented allegations regarding any of the three methods for establishing the liability of a governmental entity. First, plaintiff has not stated that his rights were violated due to "a deliberate choice of a guiding principle or procedure" made by any official, such as is necessary to establish an unconstitutional policy. Next, plaintiff has not established the deliberate indifference to or tacit authorization of any "continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees," such as is necessary to demonstrate an unconstitutional custom. Finally, plaintiff has not alleged facts showing a "pattern

9

of similar constitutional violations by untrained employees," such as is necessary to prove a failure to train.

Plaintiff's facts concern a single incident of alleged excessive force, occurring on November 13, 2018. The Court cannot infer the existence of an unconstitutional policy or custom from a single occurrence. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991). Moreover, plaintiff's allegations against Officer Hansens accuse him of actions beyond the scope of his duties. *See Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989) (stating that individual capacity suits generally "involve actions taken by governmental agents outside the scope of their official duties," while official capacity suits involve either allegedly unconstitutional policies or actions taken by a governmental agent who possess final authority over a particular decision).

For these reasons, plaintiff's official capacity claim against Officer Hansens must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### B. Individual Capacity Claims

Plaintiff's individual capacity claim against Officer Hansens for allegedly violating his right to due process by authoring a "false conduct violation" must be dismissed. However, his individual capacity claim against Officer Hansens for excessive force is sufficient for purposes of § 1915 review.

#### i. Due Process Claim

Plaintiff alleges that Officer Hansens wrote "a false conduct violation against" him, which resulted in plaintiff receiving an additional sixty days in administrative segregation. He asserts this

10

is a violation of his right to due process. He has not, however, established the deprivation of a liberty interest.

The determination of whether prison officials denied an inmate due process involves a two-step inquiry. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). First, a plaintiff must demonstrate that he or she was deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). *See also Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (stating that a court "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest"); and *Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not"). Once it has been established that a liberty interest exists, the process necessary to protect that interest must be determined. *Williams*, 662 F.3d at 1000.

Plaintiff has not alleged that life or property is at interest in this case; thus, he must identify a liberty interest to sustain a due process claim. *See Phillips*, 320 F.3d at 847. Here, he states that his time in administrative segregation was lengthened due to Officer Hansens' "false" report.

The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As such, in order to assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002).

The Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in and of itself, an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (stating that plaintiff's "demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as atypical and significant"); and *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (stating that plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest"). This is so even if the demotion to segregation is without cause. *Phillips*, 320 F.3d at 847.

Here, plaintiff fails to demonstrate that his sixty-day extension of administrative segregation constituted an "atypical and significant hardship." The only fact he adduces is the length of time he was required to spend in administrative segregation. This is not, however, sufficient. *See Orr v. Larkins*, 610 F.3d 1032, 1033-34 (8th Cir. 2010) (stating that nine months in administrative segregation did not constitute an atypical and significant hardship). Because plaintiff has not alleged that his time in administrative segregation constituted an atypical and significant hardship, he has not established that he has been deprived of a liberty interest. Thus, his claim that Officer Hansens deprived him of due process must be dismissed.

### ii. Excessive Force Claim

Plaintiff alleges that Officer Hansens used excessive force against him in violation of the Eighth Amendment. This claim is sufficient for purposes of § 1915 review.

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). *See also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). *See also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, plaintiff alleges that Officer Hansens yanked his handcuffed hands and arms through a food port; that Officer Hansens deployed pepper spray into his face; that Officer Hansens choked him while his hands and legs were restrained; and that Officer Hansens subsequently told him that correctional officers sometimes need "to beat offenders to get [a] better understanding." Plaintiff states that throughout this incident, he did not attempt to resist and that he was in restraints. These allegations must be accepted as true. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). As such, the Clerk of Court will be directed to issue process on Officer Hansens in his individual capacity as to plaintiff's claim of excessive force.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $1.00 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claim against Cole Hansens is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's individual capacity claim against Cole Hansens for violating his right to due process is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on Cole Hansens in his individual capacity as to plaintiff's claim of excessive force, pursuant to the waiver agreement the Court maintains with the Missouri Attorney General's Office.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

A separate order of partial dismissal will be entered herewith.

Dated this 24th day of June, 2019.

Ronnie L. White
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE