UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| CHRISTOPHER TAYLOR, II, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 1:19-CV-00064-NCC |
|  | ) |  |
| COLE HANSENS, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Christopher Taylor, II's ("Plaintiff") "Request for Leave of Court to Amend Complaint/Pleading and to Add Supplemental Attachments" (Doc. 12). At the direction of the Court, Defendant filed a response (Doc. 14). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 11). For the following reasons, Plaintiff's request will be **DENIED**.

### I. Background

On April 19, 2019, Plaintiff filed this *pro se* civil action pursuant 42 U.S.C. § 1983 against Correctional Officer Cole Hansens ("Defendant") in his official and individual capacities (Doc. 1). The facts in Plaintiff's complaint as addressed in this Court's prior order are as follows. Plaintiff alleges that on November 13, 2018, he was an inmate at Southeast Correctional Center (SECC), assigned to unit #2 in administrative segregation. Officer Hansens and Officer Riley Johnson were conducting showers on this day. Officer Johnson came to plaintiff's cell and asked him if he wanted to take a shower. Plaintiff responded by telling Officer Hansens that plaintiff and Officer Johnson had "had a situation on November 11, 2018," and that plaintiff felt uncomfortable with Officer Johnson placing him in the shower.

Officer Hansens opened plaintiff's food port and placed him in wrist restraints, with a leash connected to the handcuffs. Plaintiff states that Officer Hansens then took him to the showers. He states that he was in the shower for ten minutes. While drying off, plaintiff states that he saw Officer Hansens and Officer Johnson in his cell. He was told by another offender that Officer Johnson was in his bed, on the top bunk.

Plaintiff advised Officer Hansens that he was done with his shower and ready to return to his cell. Officer Hansens replied that he would have Officer Johnson take him back if plaintiff kept rushing. Officer Hansens also asked plaintiff if he had a "celly." Plaintiff responded that he did not. He was subsequently placed back into wrist restraints and escorted back to his cell.

Plaintiff asked Officer Hansens why Officer Johnson had been in his bed. Officer Hansens answered that "he didn't know and didn't care." While approaching his cell, plaintiff states that he saw pictures scattered about and some recent mail destroyed. Plaintiff told Officer Hansens that he wanted to speak to a sergeant and that he would not step into his cell "until this matter is taken care of."

Plaintiff alleges that Officer Hansens pushed him inside the cell and "yanked the leash" that was connected to the handcuffs. This forced plaintiff's hands and arms through the food port, causing him pain. He pulled back on his arms and again asked to speak to a sergeant. Officer Hansens allegedly responded by yanking him through the food port again. Next, plaintiff claims that Officer Hansens sprayed him in the face with pepper spray, which went into his eyes and mouth.

Sergeant Stephanie Noisworthy arrived and asked for an explanation. Plaintiff attempted to tell her that he was "calling for a white shirt" when Officer Hansens threw him inside his cell and pepper sprayed him for no reason. He advised Sergeant Noisworthy that he could not

breathe and was feeling suicidal because of the pepper spray. Sergeant Noisworthy and Officer Damien Culbertson escorted plaintiff from his cell to a bench. As he exited the cell, plaintiff states that he began spitting on the ground due to the pepper spray. He states that his face felt as though it "was falling off" and that he was having trouble breathing. Plaintiff was seated on the bench in full restraints, with his hands and feet secured. At that point, Officer Hansens walked up behind him, wrapped his arm around his neck, and began choking him. According to plaintiff, Sergeant Noisworthy gave Officer Hansens three directives to stop choking him. Eventually, Officer Hansens complied.

Lieutenant Stewart arrived and escorted plaintiff to housing unit #1, where he was allowed to rinse his face but not take a shower. He was assigned to a suicide cell, where he was later found unresponsive by Officer Lynch and taken to see the nurse. The nurse took his vitals and documented his injuries, including a red mark around his neck and bruising along his side and right arm. Plaintiff alleges that ever since the incident occurred, Officer Hansens "comes around ... [once] in a while to harass [him] by stating [that] sometimes [correctional officers] have to beat offenders to get [a] better understanding."

Plaintiff claims that Officer Hansens' actions constituted the use of excessive force in violation of the Eighth Amendment. He also asserts that Officer Hansens violated his right to due process under the Fourteenth Amendment by "writing a false conduct violation" that resulted in plaintiff receiving a further sixty days in administrative segregation. Plaintiff seeks to enjoin Officer Hansens from further physical violence and threats toward him. He also requests $100,000 in compensatory damages and $25,000 in punitive damages.

On June 24, 2019, the Court[1] dismissed Plaintiff's official capacity claim against Defendant (Doc. 4). The Court also granted Plaintiff's Motion to Proceed in Forma Pauperis and directed the Clerk of Court to issue process on Defendant in his individual capacity (*Id.*). Defendant filed his answer on August 23, 2019 and a Case Management Order was entered in this case on August 29, 2019 (Docs. 9, 10). Relevant to the current request, the Case Management Order set a September 27, 2019 deadline for motions for joinder of additional parties or amendment of the pleadings (Doc. 10).

On September 23, 2019,[2] Plaintiff filed his current request in which Plaintiff seeks leave to amend his complaint to include additional facts concerning the capacity and roll of Defendant, specifically as it relates to his job capacity and authority, in an attempt to raise a claim against Defendant in his official capacity (Doc. 12 at 1). Plaintiff also requests leave to add as defendants Anne Precythe, Director of Corrections, and Alana Boyles, Director, Division of Adult Institutions, in light of their role in supervising and hiring employees at the Missouri Department of Corrections (*Id.* at 2).

**II. Analysis**

The Court should freely give leave to amend a pleading when justice so requires. Fed. R. Civ. P. 15(a)(2). Notwithstanding Rule 15, parties do not have an absolute right to amend their pleadings even under this liberal standard. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). "A district court appropriately denies the movant leave to amend if there are

---

[1] The Honorable Ronnie L. White, United States District Judge.

[2] Although Plaintiff's request was filed on the electronic docket on September 30, 2019, Plaintiff certifies that he sent the filing on September 23, 2019 (*See* Doc. 12 at 3). Under the prison mailbox rule, a prisoner's *pro se* motion is deemed filed on the date it is delivered to prison authorities for mailing to the court. *Grady v. United States*, 269 F.3d 913, 916 (8th Cir. 2001).

4

compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.* The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. *Niagara of Wis. Paper Corp. v. Paper Indus. Union Mgmt. Pens. Fund,* 800 F.2d 742, 749 (8th Cir. 1986).

      The Court finds that an amendment to Plaintiff's complaint would be futile. As addressed in some detail in the Court's prior order, an official capacity claim can be raised as to Defendant for injunctive relief only if Plaintiff can show that the alleged violation of his constitutional rights was as a result of the Missouri Department of Corrections' official policy, unofficial custom, or deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Plaintiff does not indicate with any specificity the additional facts he would raise to support an official capacity claim against Defendant. Further, the Court cannot infer, even when liberally construed, the existence of an unconstitutional policy or custom from the single alleged incident of excessive force. Similarly, to the extent Plaintiff attempts to join Anne Precythe, Director of Corrections, and Alana Boyles, Director, Division of Adult Institutions, in this action for their roles in supervising and hiring employees at the Missouri Department of Corrections, Plaintiff has failed to allege any facts that would show their personal involvement in this matter sufficient to maintain a section 1983 claim against them. "[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). *See also Ashcroft v. Iqbal*, 556 U.S.

662, 676 (2009) (a prisoner must plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (stating that a § 1983 complaint must allege facts supporting any individual defendant's personal involvement in or responsibility for constitutional violations).

### III. Conclusion

**IT IS HEREBY ORDERED** that Plaintiff's "Request for Leave of Court to Amend Complaint/Pleading and to Add Supplemental Attachments" (Doc. 12) is **DENIED**.

Dated this 8th day of November, 2019.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE